IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SILVESTER GOMEZ,

     Plaintiff,                     Case No. 1:06-cv-00491 ALA (P)

    vs.

CHENIK, M.D., et al.,

     Defendants.               <u>ORDER</u>

_____/

     Plaintiff Silvester Gomez is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C.§ 1983. On April 26, 2006, Gomez filed a verified complaint against twelve state officers. (Doc. 1). This Court screened the complaint pursuant to 28 U.S.C. § 1915A(a). This Court found that Gomez alleged colorable claims for violations of the Fourth, Eighth, and Fourteenth Amendments against Dr. Chenik, Dr. Greeves, Dr. K. Thirakomen, and Dr. T. Hasadsri. The complaint against the remaining defendants was dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).[1] Gomez was given leave to file an amended complaint within thirty-five days. He did not do so. (Doc. 14). Therefore, only the claims against Dr. Thirakomen and Dr. Hasadsri are pending before this Court.

/////

---

[1] Subsequently, the complaint was dismissed against Dr. Chenik and Dr. Greeves because Gomez failed to effect service on them.

On April 27, 2009, Dr. Thirakomen and Dr. Hasadsri filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 78-230(m).  They contend that "the undisputed facts show that Defendants were not deliberately indifferent to Plaintiff, that Defendant Hasadsri did not retaliate against Plaintiff, and that Defendants are entitled to qualified immunity."  (Doc. 63).

On May 1, 2009, this Court directed  Dr. Thirakomen and Dr. Hasadsri to file a supplemental letter brief advising this Court whether they were seeking summary judgment regarding Gomez's Fourteenth Amendment claim as well.  On May 8, 2009, Dr. Hasadsri filed a response in which he argues that Gomez has failed to present facts showing a violation of his right to due process under the Fourteenth Amendment.  (Doc. 70).

Gomez filed his opposition to the motion for summary judgment on May 21, 2009.  He asserts that there are genuine issues of material facts in dispute that require the denial of the motion for summary judgment.

For the reasons set forth below, the motion for summary judgment is granted.

I

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those which may affect the outcome of the case. *Id.* at 248. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2001).

If the moving party meets this initial burden, the non-moving party must rebut the moving party's arguments by proffering specific facts that show a genuine issue for trial exists. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). Generally, the non-moving party may not rely upon the allegations of its pleadings to establish the existence of a factual dispute, and is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56 (e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 at n.11 (1986).

When the non-moving party proceeds *pro se*, however, the non-moving party may rely on underlying verified documents without additional affidavits or admissible discovery materials to show a genuine issue exists warranting a trial. A court must consider all contentions tendered in a *pro se* party's opposition to the summary judgment, motions, and pleadings as evidence to support his assertion that genuine issues of facts exist, when such contentions and facts are predicated on personal knowledge and were attested to under penalty of perjury.[2] *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (holding that allegations contained in a *pro se* plaintiff's verified pleadings must be considered as evidence for purposes of summary judgment).

In deciding whether to grant summary judgment, courts must consider the evidence in the

---

[2]Gomez's opposition is verified. (Doc. 73).

3

light most favorable to the non-moving party, and must not make credibility findings. *Anderson*, 477 U.S. at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  Nonetheless, courts are not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Section 1983 requires that the evidence show that a person has caused the deprivation alleged to have been suffered by another. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).  In *Johnson v. Duffy*, 588 F.2d 740, (9th Cir. 1978), the Ninth Circuit held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Id.* at 743.  Therefore, to state a claim for relief under section 1983, plaintiffs must link each defendant with an affirmative act or omission that demonstrates a violation of his federal rights.

## II

### A

In their motion for summary judgment, Dr. Thirakomen and Dr. Hasadsri argue that Gomez has failed to demonstrate a deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  Dr. Hasadsri maintains that the record shows he did not retaliate against Gomez by denying a 602 appeal, and failing to approve Gomez's request for a referral to Dr. Suesberry, an eye, ear, and nose specialist.  Dr. Hasadsri also contends that Gomez has failed to show that his Fourteenth Amendment right to due process was violated.

### B

In his opposition to the motion for summary judgment filed by Dr. Thirakomen and Dr. Hasadsri, Gomez argues that "Plaintiff has shown evidence of deliberate indifference by *defendants* to Plaintiff's [sic] serious medical needs." (emphasis added).  Gomez's factual

allegations regarding his claim of an Eighth Amendment violation, however, are directed solely at Dr. Thirakomen's services as one of his treating physicians. In his response to the motion for summary judgment regarding his First Amendment retaliation claim, and his Fourteenth Amendment due process claim, Gomez relies solely on statements Dr. Hasadsri made to him.

### III

In support of his Eighth Amendment claim, Gomez alleges that on October 7, 2004, he requested that x-rays be conducted on all of his joints to determine the cause of his pain. Gomez also alleges that Dr. Thirakomen refused his demand to order x-rays and MRI's of his knees, elbows, and back at the same time, in order to determine the accuracy of Dr. Thirakomen's diagnosis that Gomez's pain was caused by degenerative arthritis.

It is undisputed that Dr. Thirakomen determined that there was no need to conduct an MRI or an x-ray examination on every joint and on Gomez's back at the same time. Gomez alleges that Dr. Thirakomen stated that budgetary concerns governed his decision not to order such tests at the same time. Dr. Thirakomen informed Gomez that he could request a follow-up examination as needed. Dr. Thirakomen expressed his medical opinion that the tests requested by Gomez were not necessary because degenerative arthritis can be diagnosed from medical history and clinical examination.

The record shows that on December 24, 2004, Dr. Thirakomen ordered that an x-ray be taken of Gomez's right knee. The x-ray revealed that there was calcium buildup in the knee cartilage. On December 28, 2004, Dr. Thirakomen ordered that Gomez's back be x-rayed. Based on Gomez's complaint that his prescribed medicine was not providing him relief from persistent pain, Dr. Thirakomen ordered an MRI of Gomez's lower back. On March 9, 2005, Dr. Thirakomen referred Gomez to a pain specialist after studying the results of the MRI test.

On May 6, 2005, Gomez requested that he receive x-ray tests because of pain in his left elbow and left knee. Dr. Thirakomen ordered that the requested x-rays be performed. On June 6, 2005, after reviewing the x-rays of his knee and elbow, Dr. Thirakomen referred Gomez to a

dermatologist for examination of his nose. It is clear to this Court that the foregoing undisputed facts demonstrate that Gomez disagrees with Dr. Thirakomen's medical opinion concerning the proper treatment for Gomez's degenerative arthritis.

To prevail on a claim of a violation of the Eighth Amendment regarding a denial of medical treatment for a prisoner serious medical needs, a plaintiff must demonstrate that "the indifference to his medical needs [are] substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutler Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1987).

"A dispute between a prisoner and prison officials over the necessity and extent of medical treatment does not raise a claim under § 1983." *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "A difference of opinion does not amount to a deliberate indifference to [a prisoner's] serious medical needs." *Id. See also*, *Shipley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) ("Mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference.").

Gomez maintains that Dr. Thirakomen was deliberately indifferent to his medical needs because he failed to order x-rays and MRI's when Gomez believed they were required to diagnose the true source of his pain so as to prescribe appropriate treatment and medication. In short, Gomez disagrees with Dr. Thirakomen's medical opinion regarding the proper treatment for his ailments. The Ninth Circuit has held that a difference of opinion regarding treatment does not amount to deliberate indifference, unless a plaintiff can proffer evidence "that the course of treatment the doctors chose was medically unacceptable under the circumstance, and . . . that [the doctors] chose this course in conscious disregard of an excessive risk to [that plaintiff's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Without such evidence, a difference of opinion is insufficient, as a matter of law, to establish deliberate indifference. Gomez has not presented any evidence that Dr. Thirakomen chose to evaluate and diagnose the causes of Gomez's pain in a medically unacceptable manner. Gomez has failed to

demonstrate that Dr. Thirakomen violated the Eighth Amendment in his treatment of Gomez's medical condition.

Gomez also asserts that Dr. Thirakomen is liable for a violation of the Eighth Amendment because his treatment decisions delayed the discovery of the cause of his pain. Gomez's contention that Dr. Thirakomen's course of treatment was unacceptable because it delayed the discovery of the underlying defects that caused him pain and debility is also unavailing. Under the law of this circuit, a mere delay in providing diagnostic testing is insufficient to state a claim of deliberate indifference without proof that the delay caused Gomez's further injury. *Shipley*, 766 F.2d at 407. Gomez has failed to offer any evidence that he suffered further injury.

## IV

In Paragraph 103 of his verified complaint, Gomez alleged as follows:

> On September 22, 2005, Plaintiff was interviewed by Dr. Hasadsri, Chief Surgeon on a second level review of ADA Appeal Log # CSP-6-05-02018. Dr. Hasadsri is named as a defendant to Plaintiff in an unrelated complaint. Dr. Hasadsri immediately stated "your appeal is denied! Haven't you learned it does no good to file on doctors in Corcoran?" M.T.A. Raymer then entered and informed Dr. Hasadsri that his signature was needed on a referral Dr. Suesberry, ear, nose, and throat specialist was requesting for Plaintiff. Dr. Hasadsri refused to sign it stating, "No, he filed a complaint against me!"

Doc. 1 at 23-4.

In screening the complaint, this Court construed this allegation as stating a colorable retaliation claim under the First Amendment. In the motion for summary judgment, the defendants contend that the record shows that Exhibit F to Gomez's complaint demonstrates that Dr. Hasadsri was not named in, did not handle, and was not related to Gomez's appeal by number CSP-C-05-2018 in which Gomez requested "knee, elbow, and back sleeves at the least until an outside source can determine whether surgery is needed."

Exhibit F contains a copy of an Inmate/Parole Appeal Form. It reflects that Gomez was

interviewed by Dr. Johnston regarding his appeal on July 7, 2006. Dr. Johnston stated: "He will be sent back to pain clinic for re-appraisal of pain. Follow-up in 6 weeks. He is satisfied with this plan." This statement was signed by Dr. Johnston.

The same form contains the following statement by Gomez.

> Dissatisfied: On 7-20-05 Dr. Friedman (pain specialist) referred me to the neurosurgeon which indicates his (Dr. Friedman's) view on how serious my condition is. The fact that I was satisfied with the plan to continue to find a successful treatment does not void the fact that the pain in all my joints disable me and restrict my daily activities.

This statement was signed by Gomez on July 24, 2005.

Gomez's Exhibit F also contains the following explanation by Dr. J. Klarich for the denial of Gomez's second level of review.

> The appellant was interviewed at the First Level of Review by J. Johnston, M.D. on July 7, 2005.
>
> The appellant's Unit Health Record has been reviewed and his appeal has been given careful consideration. The MRI of the lumbar spine showed disc protrusion but no stenosis, no nerve involvement. The x-rays of both elbows showed small spurs and of both knees showed calcium deposits, but your blood calcium and sedimentation rate were normal.
>
> Appellant has been seen by several physicians including a pain specialist and orthopedic none of which found any significant abnormalities. Therefore, no medical necessity to provide appellant with a back support or a knee and elbow sleeve. You will be followed up by the orthopedic within the institution, it is not necessary to be seen by an outside specialist.
>
> The appellant has been provided with a thorough response. Therefore, based on the above, his appeal is being **DENIED** at the Second Level of Review.
>
> If dissatisfied, the appellant is advised that he may submit his appeal at the Director's Level for review.
>
>   /s/ J. Klarich                                    10/14/02
>   J. KLARICH, MD
>   Chief Medical Officer and Health Care Manager
>   California State Prison – Corcoran

Exhibit F also contains Gomez's expression of his dissatisfaction with the second level

8

denial. Gomez stated: " For CM.O. J.Klarich to state that there is 'no medical necessity to provide appellant with a back support or knee and elbow sleeve' is a complete fabrication of the facts and amounts to deliberate indifference." This statement was signed by Gomez on October 25, 2005.

On August 30, 2005, Dr. Viranivathana recommended that Gomez be referred to Dr. Suesberry on August 30, 2005. Dr. Klarich approved this referral on September 6, 2005. Gomez consulted with Dr. Suesberry on September 28, 2005. Thus, when Gomez was interviewed by Dr. Hasadsri, Gomez had already been approved for consultation with Dr. Suesberry.

In Dr. Hasadsri's declaration, he alleges that he interviewed Gomez for the purpose of following up on his consultation by Dr. Smith. Gomez has not disputed Dr. Hasadsri's allegation regarding the purpose of the September 22, 2005 interview.

As noted above, Gomez alleged in his verified complaint that Dr. Hasadsri denied his 602 appeal, and refused to authorize a referral to Dr. Suesberry. Exhibit F, which Gomez filed with his verified complaint, refutes his allegation that Dr. Hasadsri retaliated against him by denying his appeal and refusing to refer him to Dr. Suesberry.

While there is a factual dispute regarding whether Dr. Hasadsri stated "Your appeal is denied," and refused to authorize a referral to Dr. Suesberry, Gomez has failed to "set forth specific facts showing that there is a genuine issue for trial." *In First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). Gomez has failed to allege any facts that support his contention that Dr. Hasadsri denied his 602 appeal. Exhibit F amply demonstrates that Dr. Hasadsri was not involved in denying Gomez's appeal, and the referral to Dr. Suesberry was approved by Dr. Klarich on September 6, 2005.

The office of a motion for summary judgment is "to isolate and dispose of factually unsupported claims. . . ." *Celotex Corp.*, 477 U.S. at 323-24. While there is a conflict between Dr. Hasadsri's denial of the allegations contained in Paragraph 103, that factual dispute will not

9

defeat summary judgment in this matter because the contradictory evidence presented by Gomez does not support his entitlement to a judgment in his favor.

## V

In his opposition to the motion for summary judgment, Gomez argues that "[w]here an administrative grievance alleges an Eighth Amendment constitutional violation (deliberate indifference to serious medical needs) and that grievance is denied thereby delaying treatment to those serious medical needs it raises a Fourteenth Amendment Constitutional violation as well." (Doc. 73).  Gomez has not cited any authority to support this contention.

In *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003), the Ninth Circuit held that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Id.* at 860 citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Furthermore, as discussed above, Exhibit F attached to Gomez's complaint shows that Dr. Hasadsri did not deny Gomez's grievance regarding his medical treatment.  It was denied by Dr. Klarich.  Gomez has failed to allege any facts that support this contention that Dr. Hasadsri in fact denied his 602 appeal. Gomez has failed to proffer evidence that there is a *genuine* issue of material fact in dispute as to whether his Fourteenth Amendment right was violated.

## CONCLUSION

Gomez has failed to demonstrate that Dr. Thirakomen or Dr. Hasadsri violated his First, Eight, or Fourteenth Amendment rights.

Therefore, IT IS HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. 63) is GRANTED; and

2. This case is dismissed.

The clerk is directed to enter judgment and close the case.

DATED: June 12, 2009

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT  JUDGE
Sitting by Designation